ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2004 MAY 13 PM 1: 08

CLERK _____
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **TROY ANTHONY DAVIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CV 401-290** |
| | ) | |
| **FREDERICK HEAD, Warden,** | ) | |
| **Georgia Diagnostic Prison,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## O R D E R

Petitioner Troy Anthony Davis, asserting 17 claims for relief, petitions this

Court for writ of habeas corpus under 28 U.S.C. § 2254, which provides in part pertinent to

this proceeding:

> [A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment

51

of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254 (a), (d), (e)(1).

## I. Procedural Background

In 1991 a jury in Chatham County, Georgia, found Petitioner guilty of the 1989 murder of Savannah police officer Mark Allen McPhail, obstruction of Officer McPhail, aggravated assault of two other individuals, and possession of a firearm during the commission of a felony. Petitioner was sentenced to death for Officer McPhail's murder.[1]

---

[1]The Georgia Supreme Court summarized the facts of the case as follows:

At midnight, on August 18, 1989, the victim, a police officer, reported for work as a security guard at the Greyhound Bus Station in Savannah, adjacent to a fast food restaurant. As the restaurant was closing, a fight broke out in which Davis struck a man with a pistol. The victim, wearing his police uniform – including badge, shoulder patches, gun belt, .30 revolver, and night stick – ran to the scene of the disturbance. Davis fled. When the victim ordered him to halt, Davis turned around and shot the victim. The victim fell to the ground. Davis, smiling, walked up to the stricken officer and shot him several more times. The officer's gun was still in his holster.

The victim wore a bullet proof vest, but the vest did not cover his sides and the fatal bullet entered the left side of his chest, penetrated his left lung and aorta, and came to rest at the back of his chest cavity. The officer was also shot in the left cheek and the right leg.

The next afternoon, Davis told a friend that he had been involved in an argument at the restaurant the previous evening and struck someone with a gun. He told the friend that when a police officer ran up, Davis shot him and that he went to the officer and "finished the job" because he knew the officer got a good look at his face when he shot him the first time.

After his arrest, Davis told a cellmate a similar story.

Davis v. State, 263 Ga. 5, 5-6, 426 S.E.2d 844, 846 (1993).

In 1992 the trial court denied his motion for a new trial. His convictions and death sentence were affirmed by the Supreme Court of Georgia, Davis v. State, 263 Ga. 5, 426 S.E.2d 844 (1993), and the Supreme Court of the United States denied his petition for a writ of certiorari, Davis v. Georgia, 510 U.S. 950, 114 S. Ct. 396, 126 L. Ed. 2d 344 (1993).

In 1994 Petitioner filed a petition for writ of habeas corpus ("state habeas petition") in the Superior Court of Butts County, Georgia ("state habeas court"). In 1995 the state habeas court denied Petitioner's motion for continuance of a scheduled evidentiary hearing. The Georgia Supreme Court granted Petitioner's motion for immediate review of that denial and concluded that the state habeas court had abused its discretion in denying the continuance, Davis v. Thomas, 266 Ga. 835, 837-38, 471 S.E.2d 202, 204 (1996).

In 1997, after conducting an evidentiary hearing, the state habeas court denied Petitioner's state habeas petition. Davis v. Turpin, Civ. Action No. 94-V-162, Order of Sept. 5, 1997 (entered Sept. 9, 1997), slip op. at 1 (hereinafter "State Habeas Order"). On November 13, 2000, the Georgia Supreme Court affirmed the denial of state habeas relief, Davis v. Turpin, 273 Ga. 244, 539 S.E.2d 129 (2000), and on October 1, 2001, the Supreme Court of the United States denied certiorari, Davis v. Turpin, 534 U.S. 842, 122 S. Ct. 100, 151 L. Ed. 2d 59 (2001).

On December 14, 2001, Petitioner filed a petition for writ of habeas corpus ("federal habeas petition") in this Court. A summary of the procedural background in this Court follows.

On December 14, 2001, Petitioner filed his federal petition (Doc. 2; see also Docs. 10, 14, 17, 18, 19, 20, 21). The Court granted attorney Thomas Dunn's motion to appear pro hac vice on Petitioner's behalf (Doc. 15). Petitioner filed a motion to conduct discovery and to authorize payment of expert and investigative expenses (Docs. 28, 29; see also Docs. 27, 30, 31, 33, 34). The Court denied the discovery motion (Doc. 32; see also Docs. 35, 36, 37, 41) and the request for expert and investigative assistance (Doc. 44).

Petitioner filed a motion for evidentiary hearing (Doc. 38; see also Doc. 39) and a motion for oral argument regarding the motion for evidentiary hearing (Doc. 42; see also Doc. 43). The Court denied those motions (Doc. 44).

In May 2003, noting that Petitioner's brief on the merits had not been filed despite the grant of an extension for such filing (Doc. 45), the Court announced its intention to rule on the petition as submitted (Doc. 46); however, upon attorney Dunn's request, the Court delayed its ruling. On August 15, 2003, having received no brief, the Court announced that it would rule on the petition as submitted (Doc. 47).

On September 22, 2003, Petitioner filed a motion to hold this proceeding in abeyance pending resolution of further state court proceedings which Petitioner stated he intended to file in the near future (Doc. 48; see also Doc. 49). In the alternative, Petitioner renewed his motion for evidentiary hearing in this Court (Doc. 48; see also Doc. 49). On February 29, 2004, the Court conducted a status conference at which Mr. Dunn indicated that he had not yet filed the state court proceeding but stated that he planned to file such proceeding within a matter of weeks. On April 14, 2004, the Court denied Petitioner's

4

motion to hold proceedings in abeyance and denied his alternative renewed motion for evidentiary hearing (Doc. 50).

Having considered the parties' arguments, the state courts' decisions, applicable federal and state law, and the record in this case, the Court, pursuant to the discussion hereinbelow, DENIES Petitioner's petition for writ of habeas corpus.

## II. Federal Habeas Claims

**A.    Claim One – erroneous denial of motion to change venue**

**1.    Substance and background of claim**

In Claim One, Petitioner asserts that the trial court's denial of his motion for a change of venue deprived him of his right to a fair and impartial jury at his trial and resulted in tainted proceedings, thereby denying him the fair trial and sentencing proceedings guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Petitioner contends that the pervasive nature of the pre-trial publicity rendered a fair trial in Chatham County impossible. Petitioner notes that 71 of the 84 jurors questioned during voir dire indicated either that they had heard about his case via pre-trial publicity and/or that they had discussed the case with others. Of that number, 32 potential jurors were excused for cause because of their strong feelings regarding Petitioner's guilt or because they had pre-determined the appropriate sentence. Petitioner notes that only one potential juror who was questioned about pretrial publicity indicated that he did not know anything about the case, and that juror stated that he had been living outside of Savannah prior to the trial.

The issues presented in Claim One having been rejected on direct appeal to the Georgia Supreme Court, see Davis v. State, 263 Ga. at 7(5), the state habeas court found those issues barred from reconsideration pursuant to principles of res judicata, State Habeas Order at 29,[2] thereby denying Petitioner habeas relief as to the substance of Claim One.

## 2.   Discussion

On Petitioner's direct appeal of his conviction and sentence, the Georgia Supreme Court ruled adversely to Petitioner as to the issues now presented in Claim One, and the state habeas court denied habeas relief on the basis of res judicata. Thus, Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). The Georgia Supreme Court's factual findings underlying its decision are presumed to be

---

[2] The state habeas court set out the state law regarding the procedural bar of issues that have been previously raised and litigated:

> Georgia law is well settled that, "[a]fter an appellate review the same issues will not be reviewed on habeas corpus." Elrod v. Ault, 231 Ga. 750, 750 (1974) (citations omitted). An issue which has been "actually litigated, i.e., raised and decided, in the appellant's direct appeal" cannot be reasserted in habeas corpus proceedings. Gunter v. Hickman, 256 Ga. 315, 316 (1) (1986) (citation omitted). Accordingly, under the law of the case doctrine, this court has no authority to revisit on habeas corpus review any issue already addressed by the Georgia Supreme Court on Davis's direct appeal. Roulain v. Martin, 266 Ga. 353, 353-54 (1) (1996). Any claim of error or violation of Davis's rights decided adversely to him on direct appeal is barred at this stage, and habeas corpus relief must be denied as to each such claim of error or constitutional violation.

State Habeas Order at 4-5.

correct absent "clear and convincing evidence" produced by Petitioner in rebuttal.  See id.

§ 2254 (e)(1).

The Georgia Supreme Court made the following findings and conclusions

concerning the issues raised in Claim One:

> Only 20 percent of the prospective jurors were excused for bias
> or prejudice arising from their knowledge of the case or of
> people involved in the case.  The defendant has shown neither
> actual prejudice in the jury selection process nor the kind of
> extensive and inflammatory publicity that mandated a change of
> venue in our recent case of Tyree v. State, 262 Ga. 395, 418
> S.E.2d 16 (1992).  There was no error in the denial of the
> defendant's motion for change of venue.

Davis v. State, 263 Ga. at 7 (5).

Lacking clear and convincing evidence in rebuttal of the presumed correctness

of the above findings, this Court finds that the Georgia Supreme Court's decision was not

based on an unreasonable determination of the facts in light of the evidence presented on

appeal, or that the Georgia Supreme Court unreasonably applied or contradicted established

federal law in arriving at its decision.  Therefore, Petitioner is afforded no habeas relief

through Claim One.

**B.      Claim Two – racially discriminatory jury strikes**

**1.      Substance and background of claim**

In Claim Two, Petitioner alleges that during jury selection at his trial, the

prosecution exercised its peremptory strikes in a racially discriminatory manner when it used

a disproportionate number of its strikes against black persons and provided non race-neutral

7

reasons for the strikes in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The state habeas court declined to address the jury-strike issue after finding that it had been effectively raised and litigated at motion for new trial and on direct appeal and thus barred from reconsideration in the state habeas proceeding pursuant to principles of claim or issue preclusion. State Habeas Order at 15, 30; see also supra note 2 (stating applicable Georgia law considered by state habeas court).

2.    **Discussion**

Because the Georgia Supreme Court's adverse ruling regarding the jury-strike issue underlies the state habeas court's denial of habeas relief as to the substance of Claim Two, Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254 (d). The factual findings underlying the Georgia Supreme Court's decision as to this claim are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal, id. § 2254 (e)(1).

The Equal Protection Clause of the Fourteenth Amendment prohibits the exercise of peremptory jury-selection strikes on the basis of race. Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986). Batson requires a defendant

8

asserting racial bias in making jury selections to make a prima facie case that the prosecutor

purposefully discriminated on the basis of race in exercising strikes of jurors, after which the

burden shifts to the prosecutor to rebut the inference with racially neutral explanations for

the challenges. Id. at 96-97. Whether the prosecutor's explanation is sufficient to cancel the

inference of discrimination is a determination to be made by the trial court, id. at 98, and the

trial court's factual determinations are entitled to "great deference" on appeal, id. at 98 n.21.

On appeal of Petitioner's conviction and sentence, the Georgia Supreme Court

found that "the prosecutor offered the kind of 'concrete, tangible, race-neutral and neutrally-

applied reasons' that are sufficient to rebut a prima facie case under Batson," Davis v. State,

263 Ga. at 8, and concluded that "[t]he record supports the trial court's determination that

the state successfully rebutted the prima facie case," id. at 9.  The court explained:

> The prosecutor explained that he struck five of the eight
> because of their clear reluctance to impose a death sentence....
> A prospective juror's conscientious aversion to the imposition
> of a death sentence is an adequate reason to justify a peremptory
> strike in a death-penalty case....
> .... [T]he answers of these five prospective jurors amply
> support the prosecutor's suspicions about their willingness to
> impose a death sentence.
> Another juror was struck because he testified the
> defendant "lived out in the area where some of my relatives
> live" and because he referred to the defendant by his first name
> even though he denied knowing him personally. . . . A
> reasonable suspicion about a prospective juror's impartiality that
> falls short of justifying an excusal for cause might well justify
> the exercise of a peremptory strike.
> The trial court was authorized to conclude that such is the
> case here...[T]he prosecutor's suspicions were not unreasonable.

9

> A seventh juror was struck because he testified he used to work with the defendant's mother and aunt, and he admitted that knowing them would affect his "ability to reach a fair decision in the case." The last juror was struck because the police came to her house to arrest her son for burglary and because her daughter "got into a rash of shoplifting" and was receiving psychiatric treatment for her problem. The prosecutor had legitimate, neutral and non-racial reasons to strike these two jurors.

Id. at 8-9 (internal punctuation and citations omitted).

Lacking clear and convincing evidence in rebuttal of the above findings, this Court finds that the Georgia Supreme Court's decision as to Claim Two was not based on an unreasonable determination of the facts in light of the evidence presented on appeal. This Court further finds that the decision is not contrary to or an unreasonable application of the standards established in Batson and its progeny. Accordingly, Petitioner is not entitled to habeas relief through Claim Two.

## C.   Claim Three – erroneous rulings by the trial court

### 1.   Substance and background of claim

In Claim Three, Petitioner asserts that the trial court repeatedly overruled proper objections made by the defense counsel, thereby denying him a fair trial, due process, equal protection, and effective assistance of counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, Petitioner asserts that the following rulings were erroneous: *(1)* denial of Petitioner's motions to sever Counts III and IV of the indictment; *(2)* denial of defense motions for mistrial based on

10

discovery violations relating to witness Dorothy Ferrell; *(3)* denial of Petitioner's motions for directed verdict on the obstruction charge and on the aggravated assault on Michael Cooper; and *(4)* denial of Petitioner's motion for new trial.

The state habeas court declined to address the erroneous trial rulings claim after finding it to have "already been reviewed on appeal and decided adversely" to Petitioner. State Habeas Order at 31; see also supra note 2 (stating applicable Georgia law considered by state habeas court).

2.      **Discussion**

a.      **Threshold matter: no procedural default issue as to Claim Three**

Respondent, while conceding that the majority of Claim Three is properly before the Court, contends that "the related issue of whether trial counsel was ineffective in failing to adequately support the defense motions which alleged[ly] resulted in improper rulings by the trial court" was found to have been procedurally defaulted in the state habeas court. The procedural default assertion appears to have been prompted by the following language in the State Habeas Order addressing state "Claim III" (equivalent to federal "Claim Three"):

> [T]he issue of counsel's performance at trial in failing to make an adequate showing to support defense motions is barred as having been litigated in the motion for new trial and on appeal, or in the alternative has been waived by not being raised and litigated at the first available opportunity . . . .

Id.

11

Inasmuch as Claim Three concerns erroneous trial court rulings rather than ineffective assistance of counsel, and as the parties agree that the substantive issues set out in Claim Three have not been procedurally defaulted in the state courts, this Court need not address any alleged ineffective assistance related to Claim Three.

### b.   Merits of claim

Because the Georgia Supreme Court's adverse ruling as to the issues raised in Claim Three underlies the state habeas court's denial of habeas relief as those issues, Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). The factual findings underlying the Georgia Supreme Court's decision as to the substance of Claims Three are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal, id. § 2254 (e)(1).

The challenges presented in Claim Three are addressed below.

### 1)   Denial of motion to sever

The Georgia Supreme Court found no ground for reversing Petitioner's conviction and sentence on the basis of the trial court's denial of the defense motion for severance. Davis v. State, 263 Ga. at 6 (3). The court explained:

> A denial of severance is reviewed under an abuse of
> discretion standard. Offenses may be tried together when they

12

> are based on the same conduct or constitute a series of acts
> connected together (or when they constitute part of a single
> scheme or plan).
>     Here, all the offenses are connected: they occurred the
> same evening; the same gun was involved; the second assault
> was the reason the victim tried to arrest the defendant; and there
> was some evidence that one reason he shot the officer was
> because he was afraid he had been seen in the area where the
> first assault had occurred. The denial of severance was not an
> abuse of discretion.

Id. (internal citations omitted).

Petitioner has not presented clear and convincing evidence in rebuttal of the

presumed correctness of those findings. This Court finds that the Georgia Supreme Court's

decision as to severance was not based on an unreasonable determination of the facts in light

of the evidence presented on appeal and that the Georgia Supreme Court did not

unreasonably apply or contradict established federal law in arriving at its decision. Therefore,

Petitioner is afforded no habeas relief through this subclaim.

### 2) Denial of motions for mistrial and denial of motion for new trial as related to Dorothy Ferrell's testimony

The facts underlying these subclaims follow. Dorothy Ferrell, an eyewitness

at Petitioner's trial, identified Petitioner as Officer McPhail's killer. After the close of

evidence in the guilt/innocence phase of Petitioner's trial, defense counsel's wife received

a phone call from an individual identifying herself as Ferrell and stating that she had lied on

the witness stand. See Trial Tr. 1476-77. The State then revealed to defense counsel that

Ferrell had written a letter to the District Attorney requesting favorable treatment in her own

13

legal troubles, stating "I promise you will not be making a mistake." Trial Tr. 1477-79, 1483. The District Attorney had replied to her that he was without authority and ability to help her but that he appreciated her coming forward to help bring Petitioner to justice. Trial Tr. 1479, 1484.

Ferrell was brought before the trial court for questioning outside the presence of the jury, at which time she denied making the phone call to defense counsel's home, Trial Tr. 1481-82. She admitted, however, that she had written the letter to the District Attorney and that when she testified at the Petitioner's preliminary hearing prior to writing the letter, she had felt that the District attorney was in a position to help her, Trial Tr. 1482-83, 1485.

The trial judge offered to allow the defense to recall Ferrell to question her in the presence of the jury. Trial Tr. 1494; Mot. New Trial Hr'g Tr. 40. Defense counsel declined to recall Ferrell but moved instead for a mistrial on the ground that the State had failed to timely provide the defense team with the information regarding Ferrell's letter to the District Attorney. Trial Tr. at 1493-94. The defense subsequently moved for a new trial asserting the same basis. The trial court ultimately denied both motions.

The defense raised the trial court's denial of those motions on appeal of Petitioner's conviction and sentence. Although the Georgia Supreme Court did not expressly address the trial court's denial of the motion for mistrial, it is clear that Ferrell's assurances that her testimony had been truthful, together with the defense counsel's decision not to re-open the evidence to bring Ferrell's letter to the jury's attention, see Claim Four discussion,

14

infra, amounted to a sufficient basis for the trial court's denial of the motions for mistrial and for new trial.

Petitioner has not shown that the Georgia Supreme Court's decision not to overturn Petitioner's conviction and sentence on the basis of the trial court's denial of either of the motions at issue involved an unreasonable determination of the facts in light of the evidence presented on appeal. The Court also finds that the Georgia Supreme Court did not unreasonably apply or contradict established federal law in arriving at its decision. Accordingly, Petitioner is afforded no habeas relief through these subclaims.

### 3) Denial of motions for directed verdict and motions for new trial, and overruling of other defense motions at trial

Petitioner raised the trial court's denial of motions for directed verdict as error in his direct appeal of his conviction and sentence, and Petitioner's motions for new trial were based upon grounds of ineffective assistance of counsel and errors made by the trial court during the proceedings. The state habeas court found these subclaims to have been barred from habeas consideration because of principles of res judicata or waiver. See State Habeas Order at 31; see also supra note 2 (stating applicable Georgia law considered by state habeas court). The underlying attorney actions and trial court rulings were part of the record before the Georgia Supreme Court.

Petitioner has not shown that the Georgia Supreme Court's affirmance of Petitioner's conviction and death sentence in the face of errors asserted on appeal resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented on appeal. In addition, Petitioner has not shown cause for default of any issues that were not raised on appeal. Thus, habeas relief is not afforded pursuant to these subclaims.

## D.   Claim Four – State misconduct

In Claim Four, Petitioner asserts that, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, *(1)* the State withheld material exculpatory evidence, *(2)* the prosecution presented false testimony at trial, and *(3)* law enforcement investigation of the case involved improper pressure on eyewitnesses and other witnesses, which resulted in unreliable identifications and testimony.

### 1.   Withholding of exculpatory information

#### a.   Substance and background of subclaim

Petitioner alleges that, despite timely requests by trial counsel pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the State failed to disclose material and exculpatory information concerning key trial eyewitness Dorothy Ferrell. The nondisclosed information was that Ferrell had contacted the District Attorney's office in 1990 about the possibility of a favorable disposition in an impending criminal action against her in exchange for her testimony in Petitioner's case. Petitioner asserts that this omission amounts to suppression of material exculpatory information.

16

Petitioner alleges that as a result of the State's failure to provide the exculpatory information, he was harmed by Ferrell's false testimony at trial in that the prosecution's use of her testimony played an important part in the State's success in obtaining a guilty verdict. In support of this allegation of harm, Petitioner submits Ferrell's sworn affidavit in which she states that she lied at trial when she testified that she witnessed Officer McPhail's murder and that Petitioner was the shooter.

The state habeas court found that the portion of Claim Four relating to Dorothy Ferrell had been litigated on direct appeal, thereby implying that the state habeas court declined to address that subclaim on principles of res judicata. See State Habeas Order at 31-32; Resp.'s Ans. at 18-19.

**b.    Discussion**

Because the Georgia Supreme Court's adverse ruling as to the State's suppression of Ferrell's letter underlies the state habeas court's denial of habeas relief as to that issue, Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). The factual findings underlying the Georgia Supreme Court's decision as to this subclaim are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal, id. § 2254 (e)(1).

17

Regarding the issue of the State's nondisclosure of Ferrell's letter, the Georgia

Supreme Court stated:

> The state is under a duty to reveal any understanding or
> agreement with a witness concerning criminal charges pending
> against that witness. In this case, there was no suppression of
> any understanding or agreement for prosecutorial leniency and
> no grounds for reversal.

Davis v. State, 263 Ga. at 9 (11) (internal punctuation and citations omitted). Thus, the

Georgia Supreme Court based its refusal to reverse Petitioner's conviction and sentence as

to this issue on Petitioner's failure to show that the State had breached a cognizable duty to

Petitioner.

In the absence of clear and convincing evidence to the contrary, this Court

accepts as correct the factual finding that "there was no suppression of any understanding or

agreement for prosecutorial leniency," id. However, the Georgia Supreme Court's denial of

habeas relief as to this subclaim solely on that basis, while relevant to Petitioner's Brady

claim, is not conclusive. Thus, further inquiry is necessary into whether the Georgia

Supreme Court's decision was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States,"

28 U.S.C. § 2254 (d).

"Impeachment evidence . . . as well as exculpatory evidence, falls within the

Brady rule." See United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L.

Ed. 2d 481 (1985) ("The constitutional error, if any, in this case was the Government's

18

failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination."). Where the government fails "to assist the defense by disclosing information that might have been helpful in conducting the cross-examination" of a witness, and where such nondisclosure deprives the defendant of a fair trial, the failure to disclose such evidence amounts to a constitutional violation. Id. at 678. "Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972). Accordingly, this Court must determine whether the State was under an affirmative duty to produce Ferrell's letter pursuant to Brady and to determine whether Petitioner was denied a fair trial as a result of the State's failure to produce the letter.

Assuming, arguendo, that the State was under such obligation, the circumstances reveal that due process was not violated. The failure to provide evidence favorable to an accused upon request violates due process only where the evidence is "*material* to guilt or to punishment." Brady, 373 U.S. at 87 (emphasis added). "[I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." Bagley, 473 U.S. at 674-75 (internal punctuation and citation omitted).

The key to the materiality question is defense counsel's explanation as to why the defense team decided not to recall Ferrell after the evidence had been closed at the guilt-innocence phase of the trial:

> We felt . . . that bringing [Ferrell] back before the jury would
> not help our case . . . *we weren't going to get very far with this*
> *witness, simply because we had fairly impeached her on the*
> *issue of shoplifting.* I think we had introduced some three, four,
> or five shoplifting convictions; therefore, the fact that she was
> seeking help on another charge, we don't think it would have
> influenced the jury's consideration of her credibility even more
> than they had already been influenced by the convictions that we
> had introduced. . . .[W]e moved for a mistrial on the ground that
> if we had had that information [i.e., the letter that she wrote to
> the District Attorney or the fact of the letter's existence], we
> could have put it in the orderly cross-examination of the witness
> as she appeared and not calling her after the close of the
> evidence, and *we felt somewhat that if we had recalled her – the*
> *Court allowed us to open up the case–she wouldn't give us the*
> *answer we wanted, the jury would think it's some sort of twelfth*
> *hour desperation move on our part. We were frankly afraid to*
> *do that, so we moved for a mistrial . . . .*

Mot. New Trial Hr'g Tr. 40-41 (emphases and internal punctuation added).

The State's "failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination . . . . amounts to a constitutional violation only if it deprives the defendant of a fair trial." Bagley, 473 U.S. at 678. Taking into account defense counsel's explanation that the defense team felt that it had already impeached Ferrell's credibility, and additionally considering that the defense team made a strategic decision not to re-open the evidence to further impeach Ferrell regarding her motives for testifying, the Court finds that Petitioner has not shown that the outcome of the trial would have been different had the State earlier revealed the letter to the defense team. Thus, the nondisclosure of the Ferrell letter does not undermine confidence in the outcome of the trial. Accordingly, this subclaim does not justify a grant of habeas relief.

20

2.    **Offering false testimony**

a.    **Substance and background of subclaim**

Petitioner alleges that prosecution witness Kevin McQueen's testimony was false and that the prosecution exacerbated the effect of the false testimony by arguing in closing that "there is not a reason on earth to doubt [McQueen's] word," Trial Tr. 1501, when in fact there was "every reason" to doubt his word. In support of these allegations, Petitioner submits McQueen's sworn affidavit in which McQueen states that he "made up the story about the confession" because he was angry with Petitioner at the time and that he repeated the false story at trial because he was afraid of being charged with perjury and returned to jail if he changed his story when testifying at the trial. Aff. of Kevin McQueen ¶ 5 (Dec. 5, 1996).

Because Petitioner failed to raise a <u>Brady</u> claim regarding McQueen's testimony on appeal, the state habeas court rejected this subclaim as having been procedurally defaulted. <u>See</u> State Habeas Order at 32; State habeas hr'g Tr. 90.

b.    **Discussion**

The independent and adequate state-law basis for the procedural bar based on waiver is <u>Black v. Hardin</u>, 255 Ga. 239, 239-40, 336 S.E.2d 754, 754-55 (1985). In <u>Black</u>, the Georgia Supreme Court, construing O.C.G.A. § 9-14-42, held in pertinent part:

> The habeas corpus statute . . . limit[s] the relief available by habeas corpus to errors or deficiencies which constitute 'a substantial denial of . . . rights under the Constitution of the United States or of this state.' . . . [A] failure to make timely

21

>objection to an error or deficiency in the trial court constituted a waiver for purposes of habeas corpus review, absent the statutory exceptions of cause and prejudice shown, or a miscarriage of justice. . . .
>
>. . . [A] failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus. However, an otherwise valid procedural bar will not preclude a habeas corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal *and* a showing of actual prejudice to the accused. Even absent such a showing of cause and prejudice, the relief of the writ will remain available to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights.

Black, 255 Ga. at 239-40.

Here, Petitioner has not shown that he was prejudiced by McQueen's false testimony. Another witness testified at trial that Petitioner had confessed to killing Officer McPhail. See supra note 1 (setting out Georgia Supreme Court's factual summary). Thus, even without McQueen's testimony, the jury would have heard evidence of his confession to another individual.

Moreover, even if Petitioner had been prejudiced by McQueen's false testimony to some degree, it is evident that Petitioner cannot prevail on the merits of this subclaim because McQueen's affidavit fails to provide evidence of State misconduct. The applicable standard is that the State may not engage in "deliberate deception of a court and jurors by the presentation of known false evidence," Giglio, 405 U.S. at 153. A showing of state misconduct requires, at minimum, an allegation that the State presented McQueen's testimony while knowing it was false. McQueen's affidavit, accepted as truthful for the sake

22

of argument, shows only that McQueen, <u>on his own and prompted by no one else</u>, sought to take out his anger against Petitioner by lying to a jail warden, by making a false statement to a police officer, and by lying to the court and the jury when he testified that Petitioner confessed to shooting Officer McPhail. McQueen did not present the affidavit recanting his testimony until well after the trial had ended, and no evidence has been presented to indicate that the State knew that his trial testimony was false.

Recanted testimony presented to show "actual innocence" cannot, of itself, serve as a basis for federal habeas corpus relief. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 315, 115 S. Ct. 851, 861, 130 L. Ed. 2d 808 (1995). Rather, the appropriate inquiry is whether constitutional impropriety existed. <u>See</u> <u>id</u>. In that McQueen volunteered the allegedly false information to the warden, to the police, and to the court, and in that he was under no State compulsion to testify, Petitioner's allegations regarding McQueen's false testimony fail to state a claim under <u>Brady</u>. Therefore, habeas relief may not be granted on the basis of this subclaim.

### 3. Improper pressure on witnesses

#### a. Substance and background of subclaim

Petitioner alleges that law enforcement officers pressured witnesses to make statements and/or to identify Petitioner as the shooter. Petitioner asserts that mistaken identifications led to his conviction and sentence and argues that there was substantial conflict in the evidence adduced at trial regarding the identity, description, attire, and

physical characteristics of the two individuals involved in the assault of Larry Young and murder of Officer McPhail.  He alleges that improper pressure on witnesses by law enforcement personnel amounted to unreasonably suggestive techniques which in turn resulted in unreliable identifications of Petitioner as Officer McPhail's murderer.

In support of this subclaim, Petitioner presents several affidavits, including four affidavits submitted for the first time in this federal habeas proceeding, see Aff. of Antoine Williams (Oct. 12, 2002); Aff. of Larry Young (Oct. 11, 2002); Aff. of Darryl ("D.D.") Collins (July 11, 2002); Aff. of Monty Holmes (Aug. 17, 2001).

Respondent contends that this subclaim has been procedurally defaulted.

**b.    Discussion**

The state habeas court's denial of habeas relief as to alleged law enforcement pressure was based solely upon the court's finding of procedural default, and Petitioner has shown no cause for failing to timely raise that subclaim.  The standard for "waiver" in the state court, see Black, 255 Ga. at 239-40, is an independent and adequate state ground for a finding of procedural default in the federal court.  Likewise, the Georgia standard for overriding a procedural bar where cause and prejudice are shown is equivalent to the federal standard; thus, the state habeas court's finding of procedural default results in denial of habeas relief on the claim at issue in this Court, provided that this Court is convinced that no constitutional impropriety has occurred so as to risk a miscarriage of justice.

24

A federal court looks, under the "miscarriage of justice" exception, to colorable claims of actual innocence for *permission* to address questions of constitutional impropriety asserted in procedurally defaulted claims. See Schlup, 513 U.S. at 315-16 ("[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."); see also Brown v. Singletary, 229 F. Supp. 2d 1345, 1362 (S.D. Fla. 2002) (explaining that procedural claims for actual innocence "are not the 'I didn't do it, set me free' claims, but rather, they are the 'I didn't do it, therefore it would be a fundamental miscarriage of justice if you could not hear about the constitutional errors at my trial' claims"). If a federal court is satisfied that no constitutional error occurred, the "actual innocence" gateway need not be accessed. See Schlup, 513 U.S. at 316.

This claim has been procedurally defaulted, and Petitioner has failed to show cause for the default. Furthermore, the Court finds that because the submitted affidavits are insufficient to raise doubts as to the constitutionality of the result at trial, there is no danger of a miscarriage of justice in declining to consider the claim. Therefore, no habeas relief is afforded Petitioner through this subclaim.

4.      **Harm: lack of opportunity to prove that Sylvester Coles was triggerman**

    a.      **Substance and background of argument**

Petitioner asserts that this is a case of mistaken identity – that Petitioner admits having been present at the scene but denies shooting Officer McPhail, and that there is substantial conflict in the evidence adduced at trial regarding the identity, description, attire and physical characteristics of the two individuals involved in the incident leading to the assault of Larry Young and the murder of Officer McPhail.  Petitioner contends that the improper conduct of State agents, in combination with the ineffective assistance of counsel, led to Petitioner's misidentification and the resulting capital conviction and death sentence.

    b.      **Discussion**

The state habeas court construed the purpose of this argument as an attempt to show that Petitioner is actually innocent by clearing up the mistaken identity with affidavit evidence not available at the time of the trial.  The court found that because evidence was before the jury portraying Sylvester "Red" Coles as the perpetrator, the jury's decision reflected that there was no mistaken identity and that a habeas court has no right to supplant the jury's role by finding otherwise.  The court stated:

> [I]n connection with Claim IV [state equivalent of federal Claim
> Four], regarding an alleged lack of exculpatory evidence, Davis
> discussed in detail many items of substantive and impeachment
> evidence which allegedly would undermine the testimony of
> witnesses who identified Davis as the person who fired the shots
> that killed Officer McPhail, e.g., by showing that witness
> Sylvester "Red" Coles, rather than Davis, was the shooter.
> Although the failure to discover, admit or effectively argue the

26

> importance of these items of evidence would appear to place this case in the category of a case of "mistaken identity," the court finds from a review of the record that many pieces of evidence supporting a finding that Coles was the shooter or highlighting inconsistencies in the testimony of witnesses who identified Davis as the shooter were indeed presented to the jury during Davis' trial. The jury, in its rightful role as finder of fact during the trial, was responsible for evaluating the credibility of the witnesses and determining whether the state proved beyond a reasonable doubt that Davis shot and killed Officer McPhail.

State Habeas Order at 41.

Petitioner has not shown that these findings and conclusions are unreasonable or contrary to established federal law. Thus, no habeas relief is available through this subclaim.

**E.    Claim Five -- attorney conflict of interest**

**1.    Substance and background of claim**

In Claim Five, Petitioner asserts that the trial court forced his attorneys into a conflict of interest during post-trial proceedings in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and that as a result, Petitioner's right to assistance of counsel was compromised and he was denied a fair adversarial testing of his conviction and sentence.

The issue arose as follows. During post-trial proceedings and on appeal, Petitioner had two sets of attorneys: Petitioners' trial counsel, who were appointed by the trial court to serve as appellate counsel ("trial/appellate counsel"), and an independent attorney ("ineffectiveness counsel"), who was appointed sua sponte by the trial court to raise

27

and prosecute any issues of ineffectiveness of trial counsel. Petitioner alleges that the trial court's appointment of two sets of appellate counsel to represent him simultaneously at the motion for new trial and on direct appeal hampered the potential effectiveness of both trial/appellate counsel and ineffectiveness counsel by creating intractable conflicts and ethical dilemmas. Petitioner alleges that as a result of the dual appointment, trial/appellate counsel, ineffectiveness counsel, and Petitioner all had inherent conflicts of interest.

The state habeas court concluded that the dual appointment did not prejudice Petitioner and denied habeas relief as to the substance of Claim Five. State Habeas Order at 25-28. The Georgia Supreme Court affirmed. Davis v. Turpin, 273 Ga. at 248.

**2.     Discussion**

The significance of Petitioner's conflict of interest claim is that if Petitioner is successful, he need not establish prejudice in pressing his ineffective assistance claim (Claim Six). Generally, prejudice must be shown in order to prevail on an ineffective assistance of counsel claim, Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); however, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980). Petitioner argues that because the trial court created a conflict of interest by making the dual appointment, Petitioner need not establish prejudice in his ineffectiveness claim.

28

This Court notes that while the state habeas court described the dual appointment as "the awkward position of the primary defense team in carrying the appeal forward while answering charges of ineffective assistance," State Habeas Order at 26, the state habeas court specifically found that the ineffectiveness claim had no adverse effect on the performance of Petitioner's trial/appellate counsel, id. at 27.   In affirming the denial of state habeas relief, the Georgia Supreme Court likewise found that none of Petitioner's counsel had in fact operated under a conflict of interest.  See Davis v. Turpin, 273 Ga. at 246-49.

Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254 (d).  The Georgia Supreme Court's factual findings underlying its decision are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal.  See id. § 2254 (e)(1).

"An actual conflict occurs when a lawyer has inconsistent interests." Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999). The Georgia Supreme Court, addressing the possibility of a conflict of interest in ineffectiveness counsel and/or appellate counsel in this case, stated:

> Because nothing in the trial court or habeas court records
> suggests that Davis's supplemental appellate counsel had

29

> divided loyalties or allowed his actions to be in any way negatively affected by the simultaneous representation, we conclude that the habeas court did not err in finding that Davis's new counsel was not operating under an actual conflict of interest.
>
> Davis also contends that his original trial counsel began operating under a conflict of interest once new counsel was appointed to pursue ineffective assistance claims. Again, we conclude that he has failed to show that an actual conflict of interest existed. . . . Nothing in the record suggests that Davis's original counsel withheld his best efforts or was distracted because his professional reputation was subjected to scrutiny. The record shows that Davis's counsel encouraged Davis to speak freely and confidentially with his new counsel about any concerns Davis might have had concerning his representation at trial and even suggested several possible areas for examination to Davis's new counsel. Accordingly, we accept the habeas court's factual finding that Davis's original counsel continued to serve Davis's interests and took active steps to facilitate the efforts of Davis's new counsel to do the same.

Davis v. Turpin, 273 Ga. at 248.

Petitioner has neither produced clear and convincing evidence to cancel the presumption of correctness afforded the factual findings of the Georgia Supreme Court nor shown that the Georgia Supreme Court's decision involved an unreasonable determination of the facts in light of the evidence presented on appeal of denial of habeas relief or that the court unreasonably applied established federal law. Indeed, Petitioner's conflict argument is totally speculative. Because "speculative or merely hypothetical conflict" is not sufficient to establish a Sixth Amendment violation, Brownlee v. Haley, 306 F.3d 1043, 1064 (11th Cir. 2002), no habeas corpus relief is warranted on the basis of Claim Five.

F.     Claim Six – ineffective assistance of counsel

     a.     Substance and background of claim

        In Claim Six, Petitioner asserts that he was denied constitutionally effective assistance of counsel at trial, at motion for new trial, and on direct appeal in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. He alleges that, in combination with the State's alleged withholding of material evidence, denial of effective assistance prevented the jury from hearing compelling exculpatory evidence, thereby depriving Petitioner of a fair trial and capital sentencing proceedings.

        The state habeas court denied habeas relief as to claims of ineffectiveness of trial counsel on grounds of res judicata and procedural default. The court found "as a matter of law that the sufficiency of the performance of the primary defense team *at trial* ha[d] been reviewed and [was] procedurally barred" by operation of rules of res judicata. State Habeas Order at 8. The court also found that "to the extent issues regarding the performance of the primary defense team during the penalty phase were not raised in the motion for new trial and on appeal, those issues have been waived by not being raised and litigated at the first available opportunity." Id. at 33. Lastly, the court rejected the alleged ineffectiveness of appellate counsel and of ineffectiveness counsel as possible "cause" excusing the procedural bar of any trial-counsel ineffectiveness claims that were not timely raised. Id. As a result of those findings, the state habeas court denied habeas relief as to the substance of Claim Six. Id. The Georgia Supreme Court affirmed that denial. Davis v. Turpin, 273 Ga. at 249.

31

2.     **Discussion**

The state habeas court relied on adequate and independent state law bases in declining to address the allegations of trial counsel's ineffectiveness at trial. See supra note 2 (stating applicable Georgia law regarding previously raised and litigated issues considered by state habeas court); Black, 255 Ga. at 239-40 (stating applicable Georgia law of "waiver"). This Court is called upon to determine whether either the Georgia Supreme Court's determination that trial counsel were not ineffective and the state habeas court's determination that appellate and ineffectiveness counsel were not ineffective were based on "unreasonable determination[s] of the facts in light of the evidence presented in the state court proceeding[s]," or were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254 (d). Any factual findings underlying those courts' determinations are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal. See id. § 2254 (e)(1).

This Court first sets out the established federal standards regarding ineffectiveness of counsel, then examines the decisions rendered by the state courts regarding the issues at issue to ascertain whether federal standards were appropriately applied.

a.     **Federal ineffectiveness standards**

The Supreme Court requires examinations of ineffective assistance claims to proceed in two steps: establishment of deficient performance and a showing of prejudice to the defense.

32

A habeas petitioner seeking to prove ineffectiveness assistance must first establish that his counsel's performance was deficient. Strickland, 466 U.S. at 687. A showing of deficient performance requires a "substantial showing" that Petitioner's "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. "[I]n order to prove deficient performance, [Petitioner] must establish that no competent counsel would have taken the action that his counsel did take." Brownlee, 306 F.3d at 1059 (internal quotations omitted). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

If deficient performance is shown, Petitioner "must then demonstrate that 'the deficient performance prejudiced the defense,' which 'requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable,' " Brownlee, 306 F.3d at 1059 (quoting Strickland, 466 U.S. at 687).

"There are exceptions to the requirement . . . that prejudice be shown in order to prevail on an ineffective assistance of counsel claim." Koste v. Dormire, 345 F.3d 974, 980. For example, the Supreme Court has spared the defendant the need of showing probable effect upon the outcome where the defendant's attorney actively represented conflicting interests. A petitioner

> must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." This requires a showing of more than "some conceivable effect on the outcome of the proceeding." Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

33

> been different. A reasonable probability is a probability
> sufficient to undermine confidence in the outcome. Although
> this standard is difficult to meet, it is significant that a petitioner
> must show only a reasonable probability that the outcome would
> have been different; he "need not show that counsel's deficient
> conduct more likely than not altered the outcome in the case."
> When evaluating this probability, "a court hearing an
> ineffectiveness claim must consider the totality of the evidence
> before the judge or jury."

Brownlee, 306 F.3d at 1059 (quoting Strickland, 466 U.S. at 693-95).

**b.    Issues decided on appeal**

In determining that trial counsel were not ineffective, the Georgia Supreme

Court stated:

> Davis contends his trial counsel was ineffective for failing to
> object to certain evidence and charges, for not requesting certain
> jury charges, and for not recalling a witness for additional cross-
> examination. The record supports the trial court's determination
> that Davis has shown neither deficient attorney performance nor
> actual prejudice and, therefore, has failed to show he was denied
> effective assistance of counsel.

Davis v. State, 263 Ga. at 10 (17).

This Court finds that the above conclusion was not based on an unreasonable

determination of the facts in light of the evidence presented on appeal or that the finding was

contrary to or unreasonably applied established federal law. In making this finding, this

Court notes in particular that "[j]udicial scrutiny of counsel's performance must be highly

deferential," that "a fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight," and that "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland,</u>  466 U.S. at 689.

Pursuant to the above, no habeas relief is afforded Petitioner through the subclaims of Claim Six that were raised and rejected on appeal to the Georgia Supreme Court.

c.      **Procedurally defaulted claims**

Any issues of trial counsel's ineffectiveness that were not raised at motion for new trial and on appeal have been procedurally defaulted.  Those issues include *(1)* the defense's failure to present available evidence to counter evidence connecting the bullets retrieved from Cooper to those from the scene of Officer McPhail's shooting, *(2)* the defense's failure to investigate, discover, and present evidence showing that Sylvester Coles was Officer McPhail's killer and that Petitioner could not have been the killer, *(3)* the defense's failure to present evidence discrediting the false testimony of witnesses at trial, and *(4)* the defense's failure to file several motions to protect Petitioner's right to a fair trial and to support the pre-trial motions that were filed.

In his state habeas petition, Petitioner asserted ineffectiveness counsel's and appellate counsel's ineffectiveness at motion for new trial and on appeal as "cause" excusing his procedural default of the above claims regarding ineffectiveness of trial counsel at trial. Finding that the issue of "cause" was properly before the court, State Habeas Order at 9, the state habeas court addressed those issues on their merits after acknowledging that

35

> the procedure followed by the trial court, in sua sponte appointing separate counsel to pursue the ineffectiveness of counsel claim within the time constraints of the motion for new trial and subsequent appeal, put attorney Burch in an awkward position and likely significantly hindered his ability to assert claims on appeal relating to the effectiveness of trial counsel at the motion for new trial stage.

Id. at 8.

### 1)    Post-conviction performance of trial/appellate counsel

With respect to trial/appellate counsel's post-conviction performance at motion for new trial and on appeal, the state habeas court found that counsel "did not fail to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" in the motion for new trial proceedings," State Habeas Order at 14, and concluded that "in the totality of this case Davis has not overcome the strong presumption that his attorneys ... rendered adequate assistance at the motion for new trial and on appeal and has not shown that his counsel's performance was deficient or that the alleged deficient performance prejudiced his defense to the extent that Davis was thereby denied a trial whose result is reliable," id. at 20. The court's findings and conclusions justifying that result were as follows:

> As to Claim II, the court finds that counsel effectively raised and litigated the issue of the state's strikes against black jurors on motion for new trial and on appeal. . . .
> [As to] Claim III, . . . . counsel effectively raised and litigated many of these issues [of trial court error] . . . by setting out the applicable legal standards, discussing the relevant facts, and arguing cogently that the trial court erred in denying Davis' motions. . . .

36

As to Claim IV, . . . [t]he court notes that appellate counsel did brief the issue of the trial court's denial of Davis' motion for mistrial relating to witness Dorothy Farrell. . . . The court further finds that Davis failed to establish that counsels' failure to interview jurors after trial and before the motion for new trial fell outside the wide range of reasonable professional representation. . . .

In Claim VIII, . . . . [a]s to the preliminary hearing, . . . the primary defense team deliberately kept Davis out of the courtroom for valid strategic reasons . . . . Counsel advised Davis of his right to be present and discussed the strategic reasons for his being absent and obtained a signed waiver from Davis. Accordingly, Davis has failed to show that counsels' performance was deficient in this regard.

As to the failure to include Davis in bench conferences held during trial, Davis failed to cite any authority to support his contention that a bench conference is a critical stage at which a defendant is entitled to be present. . . . Davis also failed to demonstrate that he ever requested to be present and was denied such an opportunity.

As to the hearing about Dorothy Farrell, the court finds first that Davis failed to establish the factual predicate for this claim, i.e., that Davis was absent. . . .

. . . Davis has failed to establish that the performance of his trial counsel in failing to object to Davis' absence from certain proceedings was constitutionally deficient. It follows as a matter of course, therefore, that the performance of his *appellate* counsel was not deficient in failing to raise in the motion for new trial and on appeal a claim that trial counsel had rendered ineffective assistance in failing to ensure Davis' presence at those certain proceedings.

In Claim IX, . . . . [t]he court finds as a matter of fact that only a very limited amount of evidence of the victim's "worth" was admitted. . . . The court finds as a matter of law. . . that counsel at trial did not render deficient performance in failing to object to the evidence, and, consequently counsel on appeal did not render deficient performance in failing to raise the issue of victim impact evidence.

In Claim X, . . . . Davis failed to overcome the strong presumption that appellate counsels' performance was constitutionally adequate.

37

> In Claim XI, . . . . counsels' performance in attacking the Georgia death penalty statute and its application in Davis' case was reasonably effective.
>
> As to Claim XII, . . . .Davis' attorneys raised and litigated several alleged errors in the jury instructions . . . . [and] the primary defense team added additional grounds to the motion for new trial regarding the trial court's charge to the jury . . . . [C]ounsels' performance in challenging the jury instructions was reasonably effective.
>
> With regard to Claim XIII, . . . . [b]ecause the Georgia Supreme Court had clearly foreclosed this line of argument [as to the UAP], and because the United States Supreme Court had in several cases declined to grant a writ of certiorari and had therefore evidenced no concern about those rulings, . . . Davis' counsel on appeal did not . . . render ineffective assistance of counsel by failing to raise an attack on the constitutionality of the UAP on appeal.
>
> [As for] Claim XIV, . . . . the primary defense team raised several issues in the motion for new trial and on appeal with regard to the constitutionality of the death penalty statute and its application in Davis' case. . . . [C]ounsel effectively raised and litigated these issues on motion for new trial and on appeal by setting out the applicable legal standards, discussing the relevant facts, and arguing cogently that the death penalty was inappropriate and unconstitutional in this case. Accordingly, Davis has failed to establish that the performance of his counsel on appeal fell outside the wide range of reasonable professional representation.

Id. at 15-20.

As for Petitioner's conflict-of-interest assertion, and as noted above in the discussion of Claim Five, the Georgia Supreme Court found that Petitioner failed to show that "an actual conflict of interest" existed, noting in particular that " 'any conflict that might have stemmed from [counsel's] interest in protecting his professional standing evaporated' when he took active, professionally-responsible steps to facilitate the litigation of Davis's

claims of ineffective assistance." Davis v. Turpin, 273 Ga. at 249 (quoting Fields v. Attorney

General of Md., 956 F.2d 1290, 1298-99 (4th Cir. 1992)).

### 2)    Performance of ineffectiveness counsel

With respect to ineffectiveness counsel's post-conviction performance, the

state habeas court concluded that Petitioner had "failed to carry his burden of proof on both

prongs of the Strickland test" as to whether ineffectiveness counsel provided ineffective

assistance of counsel at the motion for new trial or on appeal. Id. at 28.  Justifying the

court's conclusion are the following findings:

> [Ineffectiveness counsel] independently decided what issues to
> raise after reviewing the trial transcript and counsels' file,
> consulting with Davis, and performing significant outside-the-
> record investigations.
>           On the amendment to the motion for new trial,
> [ineffectiveness counsel] raised sixteen separate claims of
> ineffective assistance of counsel at trial.... [He] filed a separate
> appeal of the denial of the motion for new trial and identified the
> same sixteen issues ... as the "Enumeration of Errors."
>           ... [I]neffectiveness counsel did not fail to "bring to bear
> such skill and knowledge as will render the trial a reliable
> adversarial testing process." . . . [H]e took steps to educate
> himself in the applicable law and effective strategy. . . .
>           . . . [T]he court finds no support in the law that being
> represented by different sets of lawyers with regard to different
> issues creates any per se conflict of interest.
>           . . . Davis failed to demonstrate that his appellate
> attorneys acted under an actual conflict of interest or that he was
> prejudiced by any potential conflict of interest.

Id. at 23-28.  The Georgia Supreme Court found no abuse of discretion in the conclusion of

the state habeas court and noted in particular that "nothing in the trial court or habeas court

records suggests that Davis's supplemental appellate counsel had divided loyalties or allowed

39

his actions to be in any way negatively affected by the simultaneous representation." Davis
v. Turpin, 273 Ga. at 248.

This Court finds that the state habeas court correctly applied federal standards
in finding "reasonably effective" performance as to all matters raised regarding
ineffectiveness and that the Georgia Supreme Court's affirmance likewise reflected
application of correct federal standards. Further, this Court finds that the state habeas court's
determinations regarding appellate and ineffectiveness counsel's effectiveness were not
based on an unreasonable determination of the facts in light of the evidence presented. This
Court observes that many of the numerous allegations of ineffectiveness can be explained
on their face as trial strategy. No case, even one presented on appeal, is bullet-proof:
retroactive dissections can virtually always provide colorable indications of imperfect trial
strategy. Such imperfections, however, fall far short of showing constitutionally ineffective
assistance of counsel.

### d.    No excuse of procedural default

Petitioner asserts that the conflict of interest created by the trial court in
appointing dual counsel constitutes "cause" for ineffectiveness counsel's failure to
investigate, develop, and raise each and every aspect of trial counsel's effectiveness." Reply
Mem. at 16 (Doc. 18). Because, as noted above in the discussion of Claim Five, there was
no conflict of interest, this argument fails.

40

Petitioner also asserts that the ineffectiveness of ineffectiveness counsel for failing to raise the defaulted (at issue) claims at motion for new trial and on direct appeal constitutes "cause" excusing Petitioner's procedural default. Because, as found above, ineffectiveness and appellate counsel were not ineffective, this argument fails.

Finally, Petitioner asserts that a fundamental miscarriage of justice would result from this Court declining to consider the procedurally defaulted portions of Claim Six on their merits. Petitioner alleges that evidence was available to support trial counsel's theory that Sylvester Coles was the shooter and not Petitioner and that Petitioner was prejudiced by the absence of that evidence from the purview of the jury. Because the theory that Coles was the shooter was presented to and rejected by the jury, see discussion of Claim Seventeen, infra, this argument fails.

Therefore, Petitioner's procedural default of issues raised in paragraphs 3 through 24 and paragraph 25 (f) of Claim Six is not excused.

For the foregoing reasons, no federal habeas relief is available through Claim Six.

## G.    Claim Seven -- prejudicial and inflammatory evidence

### 1.    Substance and background of claim

In Claim Seven, Petitioner asserts that the introduction of prejudicial and inflammatory evidence at trial unconstitutionally affected his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically,

41

Petitioner asserts that the admission into evidence of "gruesome repetitive photos" of numerous crime scene photographs, autopsy photographs of the murder victim, and photographs of Larry Young's injuries was improper in that the photographs lacked probative value, were cumulative, and served to inflame and prejudice the jury.

Petitioner's challenges as to the admissibility of certain photographs having been rejected by the Georgia Supreme Court, see Davis v. State, 263 Ga. at 9 (12) (finding no error in admitting photographs of victim), the state habeas court denied relief as to the substance of this claim by declining to address any issues concerning photographs of the murder victim after finding them barred from consideration in a state habeas inquiry pursuant to principles of res judicata.  See State Habeas Order at 34; see also supra note 2 (stating applicable Georgia law considered by state habeas court).

With respect to Petitioner's challenges as to the propriety of admitting certain photographs not previously placed into issue, the state habeas court found that those challenges had been "waived by not being raised and litigated at the first available opportunity." State Habeas Order at 34.

2.    Discussion

a.    Photographs of victim

The state habeas court denied habeas relief as to the admission of certain photographs of the victim because the Georgia Supreme Court had ruled adversely to Petitioner's assertion of error regarding their admission. Thus, Petitioner must show that the

Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). The Georgia Supreme Court's factual findings underlying its decision are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal. See id. § 2254 (e)(1).

In finding no error in the admission of the photographs, the Georgia Supreme Court relied on Love v. State, 259 Ga. 468, 383 S.E.2d 897 (1989) and on Scott v. State, 250 Ga. 195, 297 S.E.2d 18 (1982). The Love court ruled that relevance and necessity are key to admission of autopsy photographs. See Love, 259 Ga. at 468 (2). The Scott court ruled that a defendant's stipulation to cause of death does not automatically preclude admissibility. Scott, 250 Ga. at 198-99. The law of these cases does not contravene established federal law, and Petitioner's claim does not include specific allegations showing that, as Petitioner argues, the "evidence lacked probative value [and] was cumulative," Reply Mem. at 18 (Doc. 18). Petitioner merely contends, without elaboration, that "the court allowed the state to introduce numerous crime scene and autopsy photographs of the victim of the crimes with which Petitioner was charged." Compl. at 60 (Doc. 2). Since Petitioner has produced no evidence rebutting the presumption of correctness afforded to the Georgia Supreme Court's finding, this portion of Claim Seven does not provide a basis for habeas relief.

### b.    Other photographs

Any issue as to the admissibility of photographs not raised on direct appeal has been procedurally defaulted without excuse. Petitioner was aware of which photographs were admitted at his trial, and because ineffectiveness counsel and appellate counsel were not constitutionally ineffective in failing (or declining) to raise any such issue on appeal, no "cause" has been shown to excuse Petitioner's procedural default. Further, there is no danger of miscarriage of justice, in that this Court is satisfied that no constitutional error occurred.

## H.    Claim Eight: Petitioner's absence from critical stages of proceedings

### 1.    Substance and background of claim

In Claim Eight, Petitioner asserts that his constitutional rights were violated due to his absence from the courtroom during critical stages of the proceedings, specifically, *(1)* during the session outside the presence of the jury when Dorothy Ferrell, her parole officer, and Petitioner's defense counsel were questioned regarding Ferrell's motives for testifying against Petitioner, *(2)* during the pre-trial hearing to decide whether his case would be bound over to the superior court for trial, and *(3)* during numerous bench conferences at which evidentiary matters were discussed and decided.

The state habeas court denied habeas relief as to Petitioner's absence from critical stages of his trial on a procedural default basis. State Habeas Order at 35 ("[T]o the extent that Davis' primary defense team could have raised objections to his absence from any proceedings at trial – and failed to do so – Claim VIII has been waived . . . ."). The Georgia

44

Supreme Court, affirming the denial of habeas relief, found that Petitioner's claim of appellate counsel's ineffective assistance (in failing to raise, on appeal, the issue of his absence) did not constitute sufficient cause and prejudice to overcome the procedural bar. Davis v. Turpin, 273 Ga. at 249.

### 2.    Conclusion

This Court finds that the state habeas court relied on an adequate and independent state law basis in declining to address the allegations of this claim. In addition, this Court finds that the Georgia Supreme Court's affirmance of the habeas court's determination that the substance of Claim Eight had been procedurally defaulted and that Petitioner had failed to show cause to excuse the default is not contrary to, or an unreasonable application of clearly established federal law. The Court further finds no danger of miscarriage of justice. Accordingly, Petitioner is not entitled to habeas corpus relief pursuant to Claim Eight.

## I.    Claim Nine: introduction of victim impact evidence

### 1.    Substance and background of claim

In Claim Nine, Petitioner asserts that the trial court allowed the prosecution to introduce victim impact evidence in violation of Petitioner's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

The state habeas court denied habeas relief as to the substance of Claim Nine, finding that it had been waived. State Habeas Order at 35. That court further held that

because Petitioner's counsel did not render ineffective assistance, any alleged deficiencies in counsel's performance could not serve as "cause" excusing Petitioner's failure to raise the substance of federal Claim Nine earlier. See id. at 36. The state habeas court also implicitly found a lack of "prejudice." Id.

### 2.  Discussion

Claim Nine has been procedurally defaulted.  The state habeas court expressly stated that its denial of habeas relief on the basis of the issue presented in Claim Nine was based on Petitioner's "waive[r] under Black v. Hardin by not being raised and litigated at the first opportunity" and the lack of cause excusing that default, id. at 35-36, and the court correctly applied a procedural default principle of state law to arrive at that conclusion.  Even if "cause" had been shown, the state habeas court's implicit finding of a lack of prejudice to Petitioner – that the "admission of a scant amount of evidence arguably relating to the victim's worth was not prejudicial," id. at 36 – resulted from an adequate and independent state procedural ground and was not an unreasonable determination of facts in light of the evidence.  This Court finds that admission of the evidence at issue in Claim Nine did not amount to harmful error threatening the constitutionality of Petitioner's conviction and death sentence so as to effect a miscarriage of justice.

Because the state habeas corpus court properly found this claim to have been procedurally defaulted, and because this Court finds no excuse of said default, no federal habeas relief is available through Claim Nine.

**J.     Claim Ten: prosecutorial misconduct**

**1.     Substance and background of claim**

In Claim Ten, Petitioner asserts that the prosecutor's inflammatory and improper comments, arguments and conduct at trial (including vouching for the thoroughness of the State's investigation, vouching for the truthfulness of the State's witnesses, attempting to discredit Petitioner's defense based on his exercise of his constitutional rights, urging consideration of matters not in evidence, misstating the evidence and the law, urging the jury to convict Petitioner because he had not proved his innocence, and improperly injecting emotion into the proceedings) rendered Petitioner's convictions and death sentence fundamentally unfair and deprived him of due process.

The state habeas court held that any issues as to prosecutorial misconduct at trial had been waived by Petitioner for failure to raise them at trial and on appeal and also found that alleged deficiencies in counsel's performance could not excuse Petitioner's failure to raise the issues now presented in Claim Ten of his federal petition.  State Habeas Order at 36.

**2.     Conclusion**

Claim Ten has been procedurally defaulted.  The state habeas court's holding was a "clear and express" statement that the state habeas court's judgment as to the issues now presented in Claim Ten rested on a finding of procedural default, and the court correctly applied a procedural default principle of state law to arrive at that conclusion. See Bailey v.

Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999) ("[W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, [Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977),] requires the federal court to respect the state court's decision."); Black, 255 Ga. at 239-40 (construing Georgia habeas corpus state, O.C.G.A. § 9-14-42).

No cause for the default of the issues in Claim Ten having been shown, there is no need to inquire into any possible prejudicial effect of such default. Because this Court is satisfied that no constitutional error occurred with respect to Claim Ten to render Petitioner's conviction and death sentence constitutionally infirm, there is no issue regarding miscarriage of justice. See Schlup, 513 U.S. at 316. Accordingly, no habeas relief is available to Petitioner through Claim Ten.

## K.    Claim Eleven: discriminatory process

### 1.    Substance and background of claim

In Claim Eleven, Petitioner asserts that the pattern and practice of Georgia prosecuting authorities, courts, and juries is to discriminate on the bases of race, sex, and poverty in the administration of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. Petitioner asserts that the decision to seek the death penalty in Petitioner's case and the sentence of death directly resulted from the inherent discrimination in Georgia's death penalty statute. He alleges that statistical information (showing that connections between factors of race, sex or economic status of accused and

victim had a predictable outcome on the imposition of the death penalty in capital cases in Georgia) were clearly apparent in the prosecution and conviction of Petitioner. He also submits that the rulings of the state courts are contrary to and/or an unreasonable application of clearly established federal law.

This issue having been rejected on direct appeal to the Georgia Supreme Court, see Davis v. State, 263 Ga. at 10 (18), the state habeas court declined to address the substance of Claim Eleven after finding it barred from reconsideration pursuant to principles of res judicata, State Habeas Order at 37; see also supra note 2 (stating applicable Georgia law considered by state habeas court), thereby denying Petitioner habeas relief as to Claim Eleven.

### 2.   Discussion

Because the state habeas court denied habeas relief as to the substance of federal Claim Eleven on the basis that the issue had been litigated and decided adversely to Petitioner in his direct appeal, Petitioner must show that the Georgia Supreme Court's decision was either based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d).

To succeed in an equal protection challenge, a petitioner must demonstrate that the decisionmakers in his case acted with discriminatory purpose and that "the purposeful

49

discrimination had a discriminatory effect on him." McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987) (internal punctuation omitted).

In this case, the Georgia Supreme Court held that the death penalty laws in Georgia are not unconstitutional for any reasons alleged, Davis v. State, 263 Ga. at 9 (13), and found that Petitioner's "sentence of death was [not] imposed under the influence of passion, prejudice or *other arbitrary factor*," id. at 10 (18) (citing O.C.G.A. § 17-10-35©)) (emphasis added). This finding is presumed correct absent clear and convincing evidence presented by Petitioner in rebuttal. See 28 U.S.C. § 2254 (e)(1).

Petitioner has presented no clear and convincing evidence rebutting the Georgia Supreme Court's finding that his death sentence was not unconstitutionally discriminatory. This Court therefore finds no reason not to defer to the findings of the Georgia Supreme Court regarding as to Petitioner's challenge on direct appeal. Accordingly, no habeas relief is available on the basis of Claim Eleven.

## L.    Claim Twelve: jury instructions

### 1.    Substance and background of claim

In Claim Twelve, Petitioner asserts that he was denied due process of law by the instructions provided to the jury at the guilt-innocence and penalty phases of his trial, and that as a result, his right to meaningful and reliable determinations of guilt and sentence was violated, contrary to the Fifth, Sixth, Eighth and Fourteenth Amendments.

The state habeas court declined to address the erroneous jury instructions claim. Noting that "several alleged errors in the jury instructions, particularly with regard to aggravating circumstances," had been litigated on appeal and decided adversely to Petitioner, the court found that to the extent Petitioner's trial counsel "failed to raise objections to any jury instructions given at trial, [the erroneous jury instruction claim] has been waived under Black v. Hardin by not being raised and litigated at the first available opportunity." State Habeas Order. at 38. The state habeas court further held that because petitioner's counsel did not render ineffective assistance, any alleged deficiencies in counsel's performance could not excuse petitioner's failure to raise the substance of federal Claim Twelve earlier. Id.

### 2. Conclusion

In that counsel was not ineffective in not raising the subclaims presented in Claim Twelve, this Claim has been procedurally defaulted without excuse. The Court finds that the jury instructions underlying Claim Twelve do not violate Petitioner's right to meaningful determinations of guilt and sentence so as to amount to a miscarriage of justice. Accordingly, no habeas relief is available through Claim Twelve.

## M. Claim Thirteen – Unified Appeal Procedure

### 1. Substance and background of claim

In Claim Thirteen, Petitioner asserts that his constitutional rights to due process were violated by the trial court's adherence to Georgia's Unified Appeal Procedure (the "UAP"). Petitioner argues that the UAP, for no rational reason, denies a capital defendant

51

his right to equal protection under the law by imposing costs upon the capital defendant but not upon other criminal defendants, by violating a defendant's right to be heard only through counsel, and by violating the attorney-client relationship without a waiver from the client. Petitioner asserts that because he was tried, convicted, and sentenced pursuant to the UAP, he was denied minimal fairness and the reliability essential in capital cases.

Petitioner asserts the following specific complaints regarding the UAP: The UAP requires the trial court to hold conferences with the defendant, the defense counsel, and the prosecutor at various stages throughout the course of a capital case. Pursuant to the UAP, the defense is required to disclose strategy and tactics without imposing a similar burden upon the State. In addition, a defendant is repeatedly asked whether he is satisfied with his attorney, thereby imposing "an impossible task" upon a lay defendant under the strain of a trial without independent counsel to assist him in making this judgment. The UAP thrusts the trial court directly into the attorney-client relationship and requires counsel to advise a petitioner of issues which have little relevance to his case and takes away from time better spent on relevant issues.

The state habeas court held that the substance of federal Claim Thirteen had been waived by not being raised and litigated at the first available opportunity. State Habeas Order at 39. The state habeas court further held that because Petitioner's counsel did not render ineffective assistance, any alleged deficiencies in counsel's performance could not

serve as "cause" excusing Petitioner's failure to raise the substance of federal Claim Nine earlier. See id.

## 2.    Conclusion

This claim has been procedurally defaulted. The state habeas court expressly stated that its judgment rested on a finding of procedural default. The state habeas court correctly applied the independent and adequate procedural default principle of state law of "waiver" to arrive at that conclusion, see Bailey, 172 F.3d at 1302-03 (construing Wainwright, 433 U.S. at 87); Black, 255 Ga. at 239-40, and the court also correctly determined that no cause existed to excuse the default.

In that Petitioner was well aware that the UAP was in effect throughout the trial proceedings, this Court finds that the state habeas court's determination that the substance of this claim has been procedurally defaulted without cause to excuse the default is sound. This Court further finds that there is no threatened miscarriage of justice in not disturbing the state habeas court's determination. Accordingly, federal habeas relief is not available to Petitioner on the basis of the allegations in Claim Thirteen.

## N.    Claim Fourteen - cruel and unusual punishment

### 1.    Substance and background of claim

In Claim Fourteen, Petitioner asserts that application of the death penalty as to him constitutes cruel and unusual punishment and violates his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Petitioner contends

53

that the death sentence rendered on the record in his case is arbitrary and capricious in that it fails to distinguish why Petitioner, who had no prior criminal record before the events in this case, deserves a death sentence although other more culpable defendants have received life imprisonment in Georgia courts despite longer criminal histories and less mitigating evidence.

The disproportionality issue presented in Claim Fourteen having been rejected on direct appeal to the Georgia Supreme Court, Davis v. State, 263 Ga. at 10 (18), the state habeas court declined to address that issue after finding it barred from reconsideration pursuant to principles of res judicata, State Habeas Order at 39-40; see also supra note 2 (stating applicable Georgia law considered by state habeas court), thereby denying Petitioner habeas relief as to Claim Fourteen. The Georgia Supreme Court, affirming denial of habeas relief, rejected the substance of Claim Fifteen on its merits. Davis v. Turpin, 273 Ga. at 245.

2.   **Discussion**

Because the Georgia Supreme Court ruled adversely to Petitioner's assertion of error regarding the substance of Claim Fourteen on direct appeal of his conviction and sentence, and because the Georgia Supreme Court again ruled adversely to Petitioner on that issue in his appeal of the state habeas court's denial of habeas relief, Petitioner must show that the Georgia Supreme Court's decisions either were based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding[s]," or were "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). Any factual findings underlying the Georgia Supreme Court's decisions are presumed to be correct absent clear and convincing evidence produced by Petitioner in rebuttal. See id. § 2254 (e)(1).

Under federal law, the death penalty may not be imposed arbitrarily and capriciously. See Maynard v. Cartwright, 486 U.S. 356, 362, 108 S.Ct. 1853, 1858, 100 L. Ed. 2d 372 (1988) ("Since Furman [v. Georgia, 408 U.S. 238, 313, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)], our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action."). In Georgia, "the court shall determine . . . whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." O.C.G.A. § 17-10-35(c)(3).

In addressing Claim Fourteen, the relevant issues are whether the Georgia Supreme Court's findings as to the issues presented were unreasonable and whether Georgia's death penalty is arbitrarily, capriciously, and discriminatorily imposed.

Petitioner argues that the goal of proportionality review is to assure that similarly situated defendants receive similar sentences, that the process be rational and not capricious, and that the ultimate sentence which the State can exact from a criminal be reserved for the most severe of murders. Petitioner contends that there is no constitutionally

permissible way to distinguish the few cases in which the death penalty has been imposed in Georgia – Petitioner's case in particular – from the many similar cases in which a lesser punishment has been imposed in Georgia.   Petitioner contends that his sentence is disproportionate under the circumstances and that the proportionality review conducted in Georgia is constitutionally infirm in general and as applied to Petitioner.

As part of Petitioner's direct appeal, the Georgia Supreme Court considered a proportionality claim. See Davis v. State, 263 Ga. at 10 (18).  The proportionality review included a comparison of "similar cases, considering both the crime and the defendant." Id. On appeal of the denial of habeas relief, the Georgia Supreme Court emphasized that "the method by which this Court conducts its proportionality review satisfies Georgia statutory requirements and is not unconstitutional." Davis v. Turpin, 273 Ga. at 245.  The court explained:

> "It is the reaction of the sentencer to the evidence before it which concerns this court and which defines the limits which sentencers in past cases have tolerated, whether before or after [Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)].  When a reaction is substantially out of line with reactions of prior sentencers, then this court must set aside the death penalty as excessive." Because it is a jury's reaction to the evidence before it that concerns this Court in its proportionality review, it is irrelevant if the sentences in the cases used for comparison were already at the time, or later are, reversed for reasons unrelated to the juries' reactions to the evidence.
> Finally, Davis contends that other defendants have received sentences less than death for crimes of similar gravity. In light of the severely aggravated nature of Davis's crime, we find no merit in his contention that the death penalty would be

56

> unlawfully disproportionate in his case, even if a new
> proportionality analysis were undertaken.

Id. at 245-46 (quoting Ross v. State, 233 Ga. 361, 366-67, 211 S.E.2d 356 (1974)).

This Court finds that the Georgia Supreme Court's review of Georgia law and its determination that Petitioner's sentence was not disproportionate and thus not unconstitutionally imposed was neither based on an unreasonable determination of the facts in light of the evidence presented on appeal nor contrary to or involving an unreasonable application of federal law as determined by the Supreme Court of the United States, particularly in light of the following statement made by the high Court:

> [W]e are concerned here only with the imposition of capital
> punishment for the crime of murder, and when a life has been
> taken deliberately by the offender, we cannot say that the
> punishment is invariably disproportionate to the crime. It is an
> extreme sanction, suitable to the most extreme of crimes.

Gregg v. Georgia, 428 U.S. 153, 187, 96 S. Ct. 2909, 2932, 49 L. Ed. 2d 859 (1976).

Pursuant to the above, the Court concludes that no federal habeas relief may be afforded Petitioner on the basis of the allegations in Claim Fourteen.

## O.   Claim Fifteen: improper jury panel exclusions and inclusions

### 1.   Substance and background of claim

In Claim Fifteen, Petitioner asserts that the trial court erred in excusing from the jury panel, over Petitioner's objection, certain jurors who were opposed to the death penalty and in placing upon the panel certain jurors who had formed opinions regarding the Petitioner's guilt, thereby denying Petitioner due process and equal protection of the law and

57

violating his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

Petitioner makes several specific assertions regarding trial court error in placing jurors on the jury panel over Petitioner objection. Petitioner asserts that the trial court erred in placing one individual on the jury panel after that individual stated that he had a predisposition for the imposition of the death penalty. He asserts that the trial court erred by placing an individual on the panel after that individual expressed an opinion that Petitioner was guilty. He asserts that the trial court erred in placing an individual on the panel after the individual stated some knowledge of the parole system, and in denying Petitioner's counsel the opportunity to voir dire that juror as to her knowledge. He asserts that an individual who was placed on the jury panel over Petitioner's objection after she stated an opinion regarding a number of the State's witnesses with whom she was acquainted should have been excused for cause.

Petitioner also asserts that the Court erred in excusing seven jurors from the panel who stated that they held opinions in opposition of the death penalty.

This claim was raised and rejected by the Georgia Supreme Court on direct appeal of Petitioner's convictions and sentence. Davis v. State, 263 Ga. at 7.

2.    **Discussion**

Because the Georgia Supreme Court ruled adversely to Petitioner's assertion of error regarding the exclusion and inclusion of jurors, Petitioner must show that the

Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d).  Any factual findings underlying that  decision are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal.  See id. § 2254 (e)(1).

The Georgia Supreme Court found that Petitioner's assertions regarding jury selection did not show any unconstitutional qualification or disqualification of jurors, that the trial court was within its discretion in limiting voir dire examination with respect to parole and in finding jurors to be qualified, and that any error in qualifying a prospective juror who is not utilized on the traverse jury is harmless.  See Davis v. State, 263 Ga. at 7(6), (7), (8), (9).

Petitioner has not shown that the Georgia Supreme Court's decisions with respect to the issues presented in Claim Fifteen were based on an unreasonable determination of the facts in light of the evidence presented on appeal or that the decision was contrary to or involved an unreasonable application of federal law. Accordingly, no habeas relief is available through Claim Fifteen.

**P.    Claim Sixteen: exclusion of mitigating evidence**

**1.    Substance and background of claim**

In Claim Sixteen, Petitioner asserts that the trial court erred in excluding mitigation evidence in violation of Petitioner's rights under the Sixth, Eighth, and Fourteenth

Amendments. The excluded mitigation evidence consisted of letters from Petitioner's friends and family that Petitioner sought to introduce in mitigation at the sentencing phase of his trial. Sent. Tr. 31-32. After the defense had presented live testimony from family and acquaintances who testified on behalf of Petitioner as to his character, Sent. Tr. at 14-31, the prosecutor objected to the admission of several pages of handwritten letters from individuals on the basis that they were "the rankest hearsay to the extent that they are written by witnesses who may testify," and that they were "wholly redundant to any testimony that's offered live and in court," Sent. Tr. at 31-32. The trial court sustained the prosecutor's objection, and the letters were not admitted. Sent. Tr. at 32.

The issue underlying Claim Sixteen was raised and rejected by the Georgia Supreme Court on direct appeal of Petitioner's conviction and sentence. Davis v. State, 263 Ga. at 9 (14).

### 2. Discussion

Because the Georgia Supreme Court ruled adversely to Petitioner's assertion of error regarding the mitigation evidence at issue, Petitioner must show that the Georgia Supreme Court's decision either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d). Any factual findings

60

underlying that decision are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal. See id. § 2254 (e)(1).

Under established federal law, "the sentencer, in all but the rarest kind of capital case, shall not be precluded from considering, *as a mitigating factor*, any *aspect* of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Locket v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65, 57 L. Ed. 2d 973 (1978) (first emphasis in original, second emphasis added) (finding statutory limitations on court's power to admit mitigation evidence incompatible with Eighth and Fourteenth Amendments); see also Skipper v. South Carolina, 476 U.S. 1, 8, 106 S. Ct. 1669, 1673, 90 L. Ed. 2d (1986) (holding that where exclusion of relevant mitigating evidence "impede[s] the sentencing jury's ability to carry out its task of considering all relevant facets of the character and record of the individual offender," resulting death sentence cannot stand); Green v. Georgia, 442 U.S. 95, 97, 99 S. Ct. 2150, 2151-52, 60 L. Ed. 2d 738 (1979) (reversing death sentence imposed because of *mechanistic* application of state hearsay rule "to defeat the ends of justice"); Alley v. Bell, 307 F.3d 380, 398-99 (6th Cir. 2002) (noting that Locket rule "limits the traditional discretion of state courts to exclude evidence based on state evidentiary rules" but citing Tenth and Fourth Circuit decisions indicating that Locket does not preclude exercise of discretion to apply state rule of evidence at sentencing phase).

On appeal of Petitioner's conviction and sentence, the Georgia Supreme Court found no error in the trial court's "requiring defense mitigation witnesses to testify subject to cross-examination and not allowing the defense merely to introduce in evidence written letters from family members and neighbors." Davis v. State, 263 Ga. at 9 (14). The court specifically rejected Petitioner's contention that hearsay evidence *must* be admitted at the sentencing phase of a death-penalty case. Id. (citing Green, 442 U.S. 95, and Isaacs v. State, 259 Ga. 717, 737 (37), 386 S.E.2d 316, 333 (1989)).

This Court finds that Petitioner has not shown that the Georgia Supreme Court's denial of relief based on the substance of Claim Sixteen was based on an unreasonable determination of the facts in light of the evidence or that the decision was contrary to or an unreasonable application of established federal law. Accordingly, no federal habeas relief is afforded Petitioner through Claim Sixteen.

## Q.   Claim Seventeen: totality of procedural and substantive errors

### 1.   Substance and background of claim

In Claim Seventeen, Petitioner argues that his federal habeas claims should be considered in the aggregate. Positing that "[w]hile there are means for addressing each individual error, the fact is that addressing these errors on an individual basis will not afford adequate safeguards against an improper conviction and improperly imposed death sentence" as provided by the Constitution, Petitioner contends that the sheer number and types of errors involved in his trial virtually dictated the sentence that he would receive. As a result,

Petitioner argues, the process itself failed him, and he did not receive the fundamentally fair trial to which he was entitled.

The state habeas court denied relief as to Claim Seventeen on its merits. State Habeas Order at 40-42. The Georgia Supreme Court affirmed the denial of Petitioner's petition but did not specifically address the substance of Claim Seventeen. Davis v. Turpin, 263 Ga. 5.

### 2.    Discussion

In that the Georgia Supreme Court did not address Petitioner's aggregation argument, the ultimate question is whether the state habeas court's denial of habeas relief as to the substance of Claim Seventeen resulted in a decision that either was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" on appeal, or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254 (d). Any factual findings underlying that decision are presumed to be correct absent "clear and convincing evidence" produced by Petitioner in rebuttal. See id. § 2254 (e)(1).

The state habeas court construed Claim Seventeen as an argument that because the miscarriage of justice exception is applicable, Petitioner should not be denied habeas relief solely on the basis of application of procedural bars. Noting "the importance of the habeas corpus process in avoiding the application of the death penalty in inappropriate cases even where problems with the trial do not fit neatly into any formulaic analysis of the

63

accused's rights," State Habeas Order at 41, the state habeas court based its analysis of this claim on "a thorough review of the entire trial record, the record on appeal, and the evidence introduced during the trial of the habeas petition," id.

The court addressed in particular Petitioner's allegations in the state claim corresponding to federal Claim Four and acknowledged that there were "many items of substantive and impeachment evidence which allegedly would [have undermined] the testimony of witnesses who identified [Petitioner] as the person who fired the shots that killed Officer McPhail, [for example], by showing that Sylvester Coles, rather than [Petitioner], was the shooter." Id. Nonetheless, the state habeas court concluded:

> Although the failure to discover, admit or effectively argue the importance of these items of evidence would appear to place this case in the category of a case of "mistaken identity," the court finds from a review of the record that many pieces of evidence supporting a finding that Coles was the shooter or highlighting inconsistencies in the testimony of witnesses who identified Davis as the shooter were indeed presented to the jury during Davis' trial. The jury, in its rightful role as finder of fact during the trial, was responsible for evaluating the credibility of the witnesses and determining whether the state proved beyond a reasonable doubt that Davis shot and killed Officer McPhail. This court, although acting now as the finder of fact in this habeas proceeding, cannot supplant the role of the jury and find based on its own review of the record that the jury *should* have concluded that the state did not carry its burden at Davis' trial. The core purpose of the writ of habeas corpus would not be served by such a presumptuous usurpation of the jury's deliberative process. This court is limited to evaluating whether Davis' rights were properly protected in the context of his jury trial.

Id.

This Court finds that the state habeas court's reading of this claim as an argument made to support application of the miscarriage of justice exception was a fair assessment of Petitioner's position. The "actual innocence" standard requires a "colorable showing of actual innocence," Bailey, 172 F.3d at 1306, that is strong enough to undermine the habeas court's "confidence in the outcome of the trial," Schlup, 275 F.3d at 316. Clearly, the state habeas court's confidence was not undermined by the evidence of actual innocence presented in the state proceeding.

As explained above, a federal court looks, under the miscarriage of justice exception, to colorable claims of actual innocence for "permission" to address questions of constitutional impropriety asserted in procedurally defaulted claims. See Schlup, 513 U.S. at 315-16; see also Brown, 229 F. Supp. 2d at 1362. If a federal court is satisfied that no constitutional error occurred, however, the "actual innocence" gateway need not be implemented. See Schlup, 513 U.S. at 316. Ultimately, the state habeas court's analysis serves as assurance that no constitutional deficiencies exist in this case so as to merit habeas corpus relief.

Pursuant to the above, Petitioner's petition for writ of habeas corpus (Doc. 2) is **DENIED.**

So **ORDERED.**

JOHN F. NANGLE
UNITED STATES DISTRICT JUDGE

Date: May _13_, 2004

65

UNITED STATES DISTRICT COURT
Southern District of Georgia

Case Number:     4:01-cv-00290
Date Served:     May 13, 2004
Served By:       Betsy C. West

Attorneys Served:

Thomas H. Dunn, Esq.
Susan V. Boleyn, Esq.

_____ Copy placed in Minutes

_____ Copy given to Judge

_____ Copy given to Magistrate